UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANIA CANAVATI,<br>   Plaintiff,<br> v.<br>COSTCO WHOLESALE CORPORATION,<br>   Defendant. | Case No. 18-cv-07284-HSG<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 33 |

Pending before the Court is Defendant Costco Wholesale Corporation's motion for summary judgment as to Plaintiff Rania Canavati's single cause of action for negligence. *See* Dkt. No. 33. The Court held a hearing on the motion on October 17, 2019. *See* Dkt. No. 40. Having carefully considered the parties' arguments, the Court **DENIES** the motion for summary judgment.

**I. BACKGROUND**

The following facts are based on the evidence viewed in the light most favorable to Plaintiff as the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor").

On September 4, 2016, between approximately 1:30 and 1:33 p.m., Plaintiff slipped and fell on a clear liquid on the floor while walking down an aisle at a Costco store located in South San Francisco. *See* Dkt. No. 33-2, Ex. A ("Canavati Depo." at 30:23–31:22; 34:4–20; 40:24–41:11; 46:5–25); Dkt. No. 36-2 ("Eyad Canavati Decl." at ¶ 5). Although Plaintiff does not recall the exact location where she fell, it was somewhere toward the back of the store near the refrigerator and freezer section. *See* Canavati Depo. at 28:6–29:5. Plaintiff's husband, who was

with her at the time, took photographs of where she fell a few minutes later, and noted the time on his phone as 1:33 p.m. *See* Canavati Depo. at 29:7–17; Eyad Canavati Decl. at ¶¶ 4–5.

Defendant's employees conduct regular inspections of the store, during which they look for spills or other hazardous conditions. *See* Dkt. No. 33-3 ("Wardhani Decl." at ¶¶ 4–6). As relevant here, Defendant's inspection log from the day of Plaintiff's fall indicates that such inspections were conducted from 12:00 to 12:19 p.m., and again from 1:00 to 1:40 p.m. *See* Dkt. No. 33-3, Ex. A. Defendant's employee Yeni Wardhani conducted the 1:00 p.m. inspection. *See* Wardhani Decl. at ¶ 5; Dkt. No. 36-1, Ex. 3 ("Wardhani Depo." at 12:17–14:12, 15:13–16:15). During this inspection, Ms. Wardhani's task was twofold: she both looked for potential hazards and also checked the digital thermometers on the front of the refrigerators and freezers to ensure that they stayed within the proper temperature range. *Id.* at ¶ 7; Wardhani Depo. at 34:16–36:16; 39:7–40:9. Ms. Wardhani's inspections take approximately 40 minutes, on average, to complete. *See id.* at 25:18–22.

In the present motion, Defendant contends that Plaintiff has not proffered evidence that Defendant had any actual or constructive notice of the liquid on the floor, as Plaintiff lacks any evidence of where the liquid came from; what it was; or how long it was on the floor prior to her fall. *See* Dkt. No. 33-1 at 1–2, 5. Defendant further contends that the undisputed evidence shows that Defendant had performed an inspection of the area where Plaintiff fell, and found no hazards in the five to fifteen minutes before Plaintiff's fall. *See id.* Plaintiff counters that triable issues of fact exist as to when Defendant inspected the area where Plaintiff fell. *See* Dkt. No. 36 at 6–8.

**II.   EVIDENTIARY OBJECTIONS**

In ruling on a motion for summary judgment, the Court may only consider evidence that is admissible. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)). Federal Rule of Civil Procedure 56(c) allows parties to object to evidence cited to support or dispute a fact. Here, both parties raise objections to the evidence submitted in relation to Defendant's motion. *See* Dkt. Nos. 36-3, 39. However, many of the objections concern evidence that is not material to the Court's decision. To the extent that certain facts or evidence are not mentioned in this order,

2

the Court has not relied on them in reaching its decision. Moreover, even if the Court had considered such facts or evidence, the Court finds that they would not have changed its decision.

### III. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *See Celotex*, 477 U.S. at 323.

## IV. DISCUSSION

To establish negligence under California law, a plaintiff must prove: (1) the defendant had a legal duty to exercise reasonable care; (2) the defendant breached that duty; (3) the defendant's breach caused the plaintiff's injury; and (4) the plaintiff suffered damages as a result. *See Ortega v. Kmart Corp.*, 26 Cal. 4th 1200, 1205 (Cal. 2001). "It is well established in California that although a store owner is not an insurer of the safety of its patrons, the owner does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." *Id.* Generally, "[a] store owner exercises ordinary care by making reasonable inspections of the portions of the premises open to customers, and the care required is commensurate with the risks involved." *Id.* For example, if the store is "self-service" such that customers are "invited to inspect, remove, and replace goods" displayed on the shelves, "the exercise of ordinary care may require the owner to take greater precautions and make more frequent inspections than would otherwise be needed to safeguard against the possibility that such a customer may create a dangerous condition by disarranging the merchandise and creating potentially hazardous conditions." *Id.* (quotations omitted).

To establish causation, "an owner must have actual or constructive notice of the dangerous condition . . . ." *Id.* at 1203. To meet that burden, the plaintiff may show that the hazardous condition existed long enough for the owner to have discovered and corrected it. *See id.* at 1207 ("The owner must inspect the premises or take other proper action to ascertain their condition, and if, by the exercise of reasonable care, the owner would have discovered the condition, he is liable

for failing to correct it."). Thus, if a plaintiff "can show that an inspection was not made within a particular period of time prior to an accident, [she] may raise an inference that the condition did exist long enough for the owner to have discovered it." *Cardoza v. Target Corp.*, No. CV172232MWFRAOX, 2018 WL 3357489, at *3 (C.D. Cal. June 22, 2018), *aff'd*, 765 F. App'x 360 (9th Cir. 2019) (citing *Ortega*, 26 Cal. 4th at 1212–13).

The California Supreme Court has cautioned that "[w]hether a dangerous condition has existed long enough for a reasonably prudent person to have discovered it is a question of fact for the jury, and the cases do not impose exact time limitations" because "[e]ach accident must be viewed in light of its own unique circumstances." *Id.* at 1207. Nevertheless, some courts "apply a 30-minute threshold" of time between an inspection and an accident when determining whether to submit questions of notice to a jury. *See, e.g.*, *Cardoza*, 2018 WL 3357489 at *3 (collecting cases); *Ortega*, 26 Cal. 4th at 1210 (noting that if an inspection is not made "within at least 15 to 30 minutes" before an accident, that "may give rise to an inference that the [hazard] remained on the floor long enough to enable [the owner], in the exercise of reasonable care, to discover and remove it").

Here, Plaintiff concedes that she has no evidence that Defendant had actual notice of the liquid on the floor that caused her to fall. *See* Dkt. No. 36 at 6, n.4. Thus, to carry her burden, Plaintiff must present evidence that Defendant had constructive notice of the liquid. The critical question, therefore, is when Defendant inspected the area where Plaintiff fell. During her deposition, Ms. Wardhani mapped out her inspection route, *see* Wardhani Depo. at 24:17–28:14; Dkt. No. 33-3, Ex. B, and estimated the amount of time she spends inspecting the various locations along this route, *id.* at 46:17–48:13; Dkt. No. 33-3, Ex. B. Ms. Wardhani further clarified that she "ha[s] conducted hundreds of 'floor walk' inspections of the warehouse," she "always do[es] them the same way," and she "always take[s] the same route." *See* Wardhani Decl. at ¶¶ 4–5; *see also* Wardhani Depo. at 46:17–19 (Plaintiff's counsel clarifying before asking about time estimates that "again, I'm just referring to the time of September 4, 2016").

Ms. Wardhani explained that she would spend 2–5 minutes in the food court; 5–10 minutes walking the "hard line" from the food court to the bakery; 2–5 minutes in the bakery; and 5–15

5

minutes in the refrigerator and cooler section when doing temperature checks; and she would complete her inspection by reviewing the food aisles. *See* Wardhani Depo. at 24:17–27:25; 46:17–48:13; Dkt. No. 33-3, Ex. B. Taking the longer of these estimates, even without accounting for any additional time needed for Ms. Wardhani to travel between these areas in the store, it is possible that Ms. Wardhani did not finish her inspection of the area where Plaintiff fell until 1:35 p.m., several minutes *after* Plaintiff's fall. Therefore, making all reasonable inferences in Plaintiff's favor as it must at this stage, the Court finds that a reasonable trier of fact could conclude that Defendant did not inspect the area where Plaintiff fell for over an hour—from 12:19 p.m., when the noon inspection was completed, until Plaintiff's fall at 1:30 p.m.[1]

Additionally, Ms. Wardhani has acknowledged that during her 1:00 p.m. inspection, she was not only inspecting the floor for spills and other hazards, but was also checking and logging the temperature of the refrigerators and freezers in a separate log. *See* Wardhani Depo. at 39:7–40:9. As Plaintiff suggests, a reasonable trier of fact could conclude that even if Ms. Wardhani had passed by the area where Plaintiff fell during the inspection, she was not focused on checking the floor for hazards because of this multi-tasking. *See* Dkt. No. 36 at 7.

In response, Defendant points out that in Ms. Wardhani's subsequent declaration, she states that she "believe[d]" that she inspected the area in which Plaintiff fell "at approximately 1:15–1:25 p.m.," and that she would have cleaned any liquid she saw on the floor at that time. *See* Wardhani Decl. at ¶ 7. Defendant also disclaims the time estimates that Ms. Wardhani provided during her deposition as too generic and not specific to her inspection on September 4, despite her acknowledgment that she "always do[es] them the same way." *See* Dkt. No. 37 at 7; Wardhani Decl. at ¶¶ 4–5. And during the hearing, Defendant further argued that accepting Plaintiff's proposed inspection timeline would not have left Ms. Wardhani with sufficient time to inspect the rest of the store, given that she completed her 1:00 p.m. inspection by 1:40 p.m. *Cf.* Dkt. No. 33-3, Ex. B. However, Defendant's arguments simply highlight the factual dispute. The imprecision

---

[1] The Court stresses that in applying the summary judgment standard, it is not making findings of fact of any kind as to this or any other issue, and it expresses no view as to the likely persuasiveness of either party's case at trial.

6

in Ms. Wardhani's time estimates and the possibility that she was distracted during the inspection because of her need to log temperature readings raise issues of fact to resolve at trial. Thus, making all inferences in Plaintiff's favor, the Court finds that Plaintiff has raised at least one genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a).

## V. CONCLUSION

Accordingly, the Court **DENIES** the motion for summary judgment. As discussed during the hearing, the Court further **DIRECTS** the parties to meet and confer and file a joint status report by October 25, 2019, regarding whether the parties intend to pursue private mediation or whether they would prefer the Court to refer this action to a magistrate judge for a settlement conference. The Court cautions that because the January 21, 2020, pre-trial conference and February 10, 2020, trial dates remain in effect, *see* Dkt. Nos. 24, 32, the parties must complete any ADR proceeding by January 6, 2020.

**IT IS SO ORDERED.**

Dated: 10/18/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge